# IN THE UNITIED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ RODRÍGUEZ RODRÍGUEZ<br><br>*Plaintiff*<br><br>Vs.<br><br>BCBG MAX AZRIA GROUP LLC,<br>BCB G MAX ARIA GLOBAL HOLDINGS LLC, MAX RAVE LLC, BCBG MAZ ARIA INTERMIDIATE HOLDING LLC, MLA MULTIBRAN HOLDINGS, LLC,<br>MARQUEE BRANDS, LLC<br>GBG USA INC,<br>CENTRIC BRANDS, INC<br>INSURANCE COMPANIES XYZ, JOHN DOE<br><br>*Defendants* | Caso Civil Núm.:<u>18-01075 PAD</u><br><br>RE:<br><br>UNJUSTIFIED DISMISSAL (Law. No. 80 of May 30, 1976, as amended); DISCRIMINATION BY AGE AND NATIONALITY; UNEQUAL TREATMENT (Law. No. 100 of June 30, 1959, as amended); DAMAGES |

## COMPLAINT

**TO THE HONORABLE COURT**:

Comes now, plaintiff, Jose Rodriguez Rodriguez, represented by the undersigned attorney, and very respectfully avers and prays as follows:

1. The plaintiff, **Jose Rodriguez Rodriguez**, is a natural person, of legal age, single, with physical and postal address in Urbanizacion Los Faroles Num. 500, Carr. Num. 861, Apartado Num. 2, Bayamon, Puerto Rico 00957. His phone number is (787) 365-8005.

2. The co-defendant, **BCBG Max Azria Group LLC**, is a corporation organized under the laws of the state of California, authorized to do business in Puerto Rico, and has the capacity to sue and be sued. With physical address in Macy's Store at Plaza Las

Americas, 525 Ave. Franklin Delano Roosevelt, San Juan, Puerto Rico 00918; and postal in 2761 Fruitland Avenue, Vernon, California 90058. The phone number is (787) 753-1048.

3. The Co-Defendant company was later bought by Marquee Brands LLC, GBG USA Inc and both with physical and postal address in 350 Fifth Ave 6th Floor New York, NY 10118. Co defendants also knowns as Centric Brands Inc. with physical address and postal address 1 State Street 30th Floor New York, NY 10004-1561T: 212-509-4000.

4. The co-defendant, XYZ Insurance Companies, are entities dedicated to the business of issuing insurance policies and taking risks for other people, known in a fictitious manner because they do not know their real name, who for all relevant dates in the epigraph case had issued a policy of insurance on behalf of any of the defendant to cover the risks for damage claimed here.

5. The co-defendant John Doe is any natural or juridical person that could be directly or indirectly responsible to the plaintiff and who has been fictitiously named because he does not know the real name.

**I.    THE FACTS**

6. Mr. Jose Rodriguez Rodriguez began to work for Rave stores since April 27, 1987.

7. Since the year 1990, Mr. Rodriguez Rodriguez worked as a supervisor and manager in the position of District Manager, and then as Regional Manager until 2011.

8. The Raves stores, were acquired by BCBG Max Azria Group LLC (BCBG), through the division of Max Rave LLC (Max Rave), in 2004.

9. In January 2011, while the plaintiff was Regional Manager of Max Rave, he collaborated with BCBG in an internal restructuration due to the closing of the Max

Rave Stores.

10. Because of this closing of those stores, BCBG offered the district managers of Max Rave in Puerto Rico, to place them in a lower position as store manager for BCBG, with a salary of $50,000.00 per year. Since the district manager did not accept the offer, BCBG provided them with certain packages, including payment of amounts of money and allowance, based on the provision of Law. No. 80 of May 30,1976, as amended.

11. On January 30, 2011, the plaintiff passes from Max Rave with all his benefits and years of seniority to BCBG. On that time, he is appointed as District Manager for the BCBG stores in Puerto Rico.

12. Then, from February 2017 to August 2017, the plaintiff served as Area Manager for BCBG in Puerto Rico.

13. On April 26, 2017, Craig DeMott, District Manager for Florida, Puerto Rico and Virgin Islands, visited Puerto Rico. During a visit to a particular BCBG store, he asked the plaintiff his age in front of other BCBG managers.

14. At that time, the plaintiff was worried and humiliated by the question of his age, so the plaintiff questioned DeMott if it was necessary from him to answer that kind of question. Mr. DeMott indicated that it was necessary for him to answer since he needed to know his age. The plaintiff replied and indicated that he was 52 years old.

15. After that incident, the managers who were present (Waleska Alicea and Kevin Gonzalez), approached the plaintiff and told him that the question that Mr. DeMott had asked was an inadequate question. In addition, they expressed to have felt very uncomfortable with the situation.

16. On around July 2017, the plaintiff is informed that BCBG is going through a

restructuration process and that it would most likely be acquired by another company. Similarly, BCBG executives told the plaintiff that the position as Area Manager for Puerto Rico would be eliminated.

17. In the months of July and August of 2017, the position and name of the plaintiff as Area Manager for BCBG Puerto Rico, stopped appearing in the BCBG managerial itinerary, which established that there was already a decision made by the company to eliminate the plaintiff's position, without due process and/or prior notification.

18. In one occasion, the plaintiff questioned the District Manager for Puerto Rico and Virgin Islands, Craig DeMott, the reason why his name and position as Area Manager for Puerto Rico, did not appear in the managerial itinerary since July 2017. Mr. DeMott told the plaintiff that he would be answering that question later, which he never did.

19. In spite of the information provided by BCBG executives regarding the elimination of the Area Manager positions, in July and August 2017 itineraries, other posts and names of Area Manager continued to appear in the system, although these positions were filled with much younger persons than the applicant, which clearly establishes that the elimination exclusively of the plaintiff's position.

20. In the months of July and August 2017, BCBG executives demanded and provided guidelines to the plaintiff, with the purpose of carrying out the difficult task of informing and dealing with the process of closing one (1) of BCBG stores in Puerto Rico. However, the plaintiff always collaborated and had the expectation of continuity with the company because despite the closing of one of the stores, there are currently three (3) stores in Puerto Rico.

21. On August 18, 2017, the director of Human Resources of BCBG, Christina Chiaro,

offered the plaintiff a position of store Manager with a salary of $17.00 per hour. It should be noted that for the years of seniority and performance with the company the plaintiff had at that time a base salary of $89,440.00 or $43.00 per hour year, (without incentives).

22. The salary that the company offered to the plaintiff as an alternative, did not fit or resemble in comparison, to the other managerial positions nor to the salaries of Store Manager, nor the seniority of the plaintiff was taken into consideration.

23. The plaintiff felt humiliated and questioned that offer and the unequal treatment that was being given, knowing that there were other available positions of Area Manager and District Manager with the company, which the plaintiff was fully qualified. However, at all times they indicated that there was no other position available for him.

24. On August 21, 2017, the plaintiff asked the Director of Human Resources of BCBG, why he could not remain in his position as Area Manger if there were three (3) stores in Puerto Rico. This indicated that the position did not exist as it had been eliminated and that there was no other Area Manager position in the company. However, in the manager's itineraries other positions of Area Manager with the company continued to appear in the system, which shows that it was the plaintiff 's job that they wanted to eliminate selectively.

25. On August 22, 2017, the Director of Human Resources asked the plaintiff about his efforts with the closure and employees of a BCBG store in Puerto Rico, and informed him that a manager would be communicating with him to recapitulate what was going to be done with his position in the company.

26. On August 24, 2017, the plaintiff asked the Director of Human Resources if there was

a possibility that he could move to another managerial position or as a District Manager in an area of Florida. She indicated that there was no available space as a District Manager in Florida. However, in the month of September 2017, BCBG contracted a new District Manager for the Florida area.

27. After the plaintiff made all the efforts available to remain working with BCBG, he never received any further communication to inform him of his final status with the company or was offered another position, compensation or offer, despite the fact that he had occupied the positions of Area Manager, District Manager and Regional Manager for the Rave, Rave Max and BCBG stores for 30 years.

28. The plaintiff worked until August 30, 2017, the date on which he received an e-mail from a co-worker saying goodbye and highlighting the excellent work he did during all the time he was with BCBG. However, he never received any communication from a manager, despite the effort, collaboration, and loyalty he showed to BCBG Max until the last moment. Nor was any compensation or allowance offered to the plaintiff at the time of their separation, even though the company had done it on previous occasions with other employees and managers.

29. All this situation maintained for months, and to this day keeps the plaintiff with restlessness, anxiety, depression, suffering and has caused serious emotional damage.

30. In total disregard for the excellent work and years of service provided to the company, the plaintiff felt totally humiliated with the way BCBG eliminated its position supposedly and allegedly all classes equal or similar to the position of Area Manager, when in reality, there were and still existed other equal or similar positions for which the claimant was qualified.

31. In fact, after the discharge of the plaintiff, BCBG opened a position of District Manager in Florida, which was granted to another person with less experience and seniority than the plaintiff.

32. More suspicious and highly questionable, is that the plaintiff had begun as Area Manager just in February 2017. Prior to February 2017, the plaintiff had held the position of District Manager since 2011. However, and coincidentally, is the position of Area Manager that BCBG supposedly decides to eliminate.

## II. REMEDIES REQUESTED FOR UNJUSTIFIED DISMISSAL

33. At the time of the implied and discriminatory dismissal, the plaintiff held the position of Puerto Rico Area Manager for BCBG. However, the plaintiff's highest salary in the last (3) three years was for 2015, when he held the position of District Manager. For that year, the plaintiff accrued a salary of $102,432.39, for an average monthly total of $8,536.03.

34. In accordance with the provisions of Law No. 80 of May 30, 1976, as amended, the plaintiff has the right to receive from the defendant the following compensation:

    a. the salary corresponding to <u>6 months</u> as compensation, which in this case is **$51,216.18**.

    b. an additional indemnity equivalent to the salary of three (3) weeks for each year of service, which in this case is 30 years of service, for a total of 90 weeks, which in this case is **$192,060.73.**

    c. therefore, the total allowance corresponding to Law 80, supra, amounts to **$250,841.73**, whose sum is claimed here.

## III. REMEDIES REQUESTED FOR DISCRIMINATORY DISMISSAL

35. The plaintiff asserts that BCBG acted in a discriminatory manner against the plaintiff basing its determination on his age and nationality, being Puerto Rican. This can clearly be concluded from the questioning by company managers about their age, by indiscriminately eliminating the plaintiff's Area Manager position, the unequal treatment regarding the option and salary offered as Store Manager, and in the violation by the company, by not offering the plaintiff the opportunity to compete on equal terms based on his experience and seniority with other managers in the United States of America, as in the case of Florida, despite having equal or similar positions available.

36. All the above, contravenes the provisions of the law against discrimination in the employment of 1959, Law No. 100 of June 30, 1959, as amended (29 L.P.R.A. se. 146 et seq).

37. The damages suffered by the plaintiff, and continue to suffer are as a result of unjustified and discriminatory dismissal based on age and nationality, restlessness, depression, loss of sleep, lack of appetite, economic problems, among others, which are estimated in a sum not less than **$350,000.00**.

**WHEREFORE,** plaintiff respectfully requests this Honorable Court to condemn the defendant to pay the plaintiff, the sum of **$250,841.73** for the concept of allowance under Law 80 and the sum of **$350,000.00** for the concept of damages and mental anguish suffered by the discrimination of BCBG, plus the costs and expense and of attorney's fees not less than 25% of what is claimed as required by the statutory law in question, together with any other pronouncement that in law applies

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, today March 25, 2019.

*LOZADA LAW & ASSOCIATES*
*Attorneys for Debtor*
P.O. Box 9023888
San Juan, P.R. 00902-3888
Phone: (787) 533-1400
Email: msl@lozadalaw.com

*s/ María Soledad Lozada Figueroa*
María Soledad Lozada Figueroa
USDC No. 222811