IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSE RODRIGUEZ-RODRIGUEZ,

Plaintiff,

v.

BCBG MAX AZRIA GROUP, LLC, et al.,

Defendants.

CIVIL NO. 18-1075 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff José Rodríguez-Rodríguez ("Plaintiff") brought the present suit against co-Defendants BCBG Max Azria Group, LLC, Max Azria Global Holdings, LLC, CBG USA, Centric Brands, Inc., and Marquee Brands, LLC, for wrongful termination pursuant to Law 80, P.R. Laws Ann. tit. 29, §§ 1856a-185m, and employment discrimination on the basis of age and national origin under Law 100, P.R Laws Ann. tit. 29, §§ 146-151. Plaintiff claimed severance pay and emotional damages stemming from the co-Defendants' discriminatory and unlawful actions.

Claims against all Defendants except Marquee Brands, LLC ("Defendant") were dismissed for lack of prosecution and failure to effect timely service of process. (Docket No. 57). Marquee Brands, LLC was served with process on December 31, 2019 (Docket No. 43) and failed to answer the complaint or otherwise plead. Consequently, default was entered against Marquee Brands, LLC on April 30, 2020. (Docket No. 48).

On September 25, 2020, Plaintiff filed a Motion for Default Judgment accompanied by a sworn statement, attesting to the truth of the allegations set forth in the Complaint (Docket No. 59). On October 1, 2020, the Court issued an order indicating

that it was able to enter default judgment as to liability only because Plaintiff was claiming damages for emotional pain and suffering which required a hearing. (Docket No. 60). At that time, Plaintiff was ordered to inform to the Court whether he wished to withdraw his emotional damages claims and have judgment entered in his favor only for the severance pay or proceed to a hearing to ascertain his emotional claims. Plaintiff requested a hearing, indicating he was not withdrawing his claim for emotional damages. Due to the COVID-19 pandemic and the Court's safety protocols, no in person hearings could be scheduled for several months. On August 25, 20221, the hearing was finally held. Plaintiff Rodríguez testified at the hearing and his sworn statement was entered into evidence as Exhibit 1. (Docket Nos. 70 and 71).

For the reasons explained below, the Court GRANTS Plaintiff's Motion for Default Judgment. (Docket No. 59).

## FINDINGS OF FACT

The Court makes the following findings of fact based on the testimony heard at the hearing and the exhibit admitted into evidence, which stand uncontested.

1. On April 27, 1987, Plaintiff began to work for Rave stores.

2. Plaintiff worked as a supervisor and manager, occupying the position of District Manager and, subsequently, that of Regional Manager until 2011.

3. The Rave stores were acquired by BCBG Max Azria Group LLC ("BCBG") through the Max Rave LLC ("Max Rave") division in the year 2004.

4. In January of 2011, while Plaintiff was Regional Manager of Max Rave, he collaborated with BCBG in an internal restructuring due to the closing of 34 Max Rave stores.

5. Due to said closing, BCBG offered to place the Max Rave District Managers in Puerto Rico as BCBG store managers, an inferior position, with a salary of $50,000.00 per year. If the district managers did not accept the offer, BCBG provided them with liquidation packages, including certain compensation pursuant to the provisions of Law No. 80, P.R. Laws Ann. tit. 29, §§ 185a-185m.

6. On January 30, 2011, Plaintiff was transferred from Max Rave to BCBG, with all his benefits and years of seniority. At that time, he was appointed District Manager for the BCBG stores in Puerto Rico.

7. In 2016 a conference call was held where the Max Azria owner indicated there would be big changes coming to the upper management of the company. Specifically, new, and younger people were to be brought in.

8. In 2016, Plaintiff received a phone call where he was informed that he was being demoted to Area Manager, yet his salary would remain the same due to labor laws in Puerto Rico.

9. From February 2017 to August 2017, Plaintiff worked as Area Manager for BCBG in Puerto Rico.

10. On April 26, 2017, Craig DeMott ("Mr. DeMott"), District Manager for Florida, Puerto Rico, and the Virgin Islands, visited Puerto Rico. Plaintiff and Mr. DeMott visited several stores and talked about company policies and procedures. Plaintiff was again told big changes were coming and told him that his style was "old school".

11. During a visit to one of the BCBG stores in particular, Mr. DeMott asked Plaintiff his age in front of other BCBG managers.

12. At that time, Plaintiff was worried and humiliated about being asked his age, and he asked Mr. DeMott if it was necessary for him to answer that type of question. Mr. DeMott told him that it was necessary. Plaintiff answered that he was 52 years old.

13. Plaintiff was shocked because he had been attending company seminars for 29 years and had always been advised to refrain from making comments as to race or age. After that incident, he felt very insecure because that was not the way he had been trained. He now had a different opinion about the company.

14. After that incident, two managers that were present (Waleska Alicea and Kevin González) approached Plaintiff and told him that the question that Mr. DeMott asked him had been inappropriate. Additionally, they told Plaintiff that they felt very uncomfortable with the situation.

Case 3:18-cv-01075-CVR   Document 74   Filed 09/23/21   Page 5 of 19

José Rodríguez Rodríguez v. BCBG Max Azria, et al.
Civil No. 18-1075 (CVR)
Opinion and Order
Page 5
_____

15. On or around the month of July 2017, Plaintiff was informed that BCBG would be undergoing a restructuring process and that it would very likely be acquired by another company, which ultimately happened on July 25. Likewise, BCBG officials told Plaintiff that his position as Area Manager for Puerto Rico would be eliminated.

16. During visits to Puerto Rico and St. Thomas BCBG stores, Plaintiff asked Mr. DeMott what would happen to the Puerto Rico stores. He was told that the new owners wanted changes in the positions, and that he was not in the "alignment" of the positions in the company for him to remain working there.

17. In the months of July and August 2017, Plaintiff's name, and position as Area Manager for BCBG Puerto Rico ceased to appear in the BCBG manager's schedule, meaning that a decision had already been made by the company to eliminate Plaintiff's position, without due process or prior notice.

18. On one occasion, Plaintiff asked Mr. DeMott the reason why his name and position as Area Manager for Puerto Rico no longer appeared in the manager's schedule since July 2017. Mr. DeMott told Plaintiff that he would inform him later, but he never did.

19. At the time Plaintiff's position was eliminated, his job description and responsibility required him to have a base store and supervise two

Case 3:18-cv-01075-CVR    Document 74    Filed 09/23/21    Page 6 of 19

José Rodríguez Rodríguez v. BCBG Max Azria, et al.
Civil No. 18-1075 (CVR)
Opinion and Order
Page 6
_____

additional partner stores.

20. In the months of July and August 2017, BCBG officials had Plaintiff carry out the difficult task of dealing with the BCBG employees during the process of closing one (1) BCBG store in Puerto Rico.

21. Plaintiff always collaborated with this process and expected that he would remain with the company because, despite the closing of one (1) of the stores, three (3) other BCBG stores remained open in Puerto Rico.

22. On August 18, 2017, the BCBG Human Resources Director, Christine Chiaro, offered Plaintiff a position as Store Manager with a salary of $17.00 per hour. Due to his years of seniority and his performance with the company, Plaintiff previously had a base salary of $89,440.00 or $43.00 per hour, without incentives.

23. The salary that the company offered to Plaintiff as an alternative did not adjust or even remotely compare to the other managerial positions or to his previous salary and failed to take his seniority into consideration.

24. Plaintiff felt humiliated and questioned said offering and the unequal treatment that he was receiving, especially knowing that there were other positions available as Area Manager and District Manager positions for which Plaintiff was fully qualified. However, he was always told that there were no positions available for him.

Case 3:18-cv-01075-CVR   Document 74   Filed 09/23/21   Page 7 of 19

José Rodríguez Rodríguez v. BCBG Max Azria, et al.
Civil No. 18-1075 (CVR)
Opinion and Order
Page 7
_____

25. On August 21, 2017, Plaintiff asked the BCBG Human Resources Director why he could not remain in his current position as Area Manager if there were still three (3) open stores in Puerto Rico. Plaintiff was told that the position had been eliminated and that there were no other Area Manager positions within the company, and if they existed, it was by way of exception.

26. However, other Area Manager positions with the company continued to appear in the manager's schedules, demonstrating the discriminatory intent towards Plaintiff.

27. On August 22, 2017, the Human Resources Director asked Plaintiff about his work with the closing and the relocation of employees of a BCBG store in Puerto Rico and told him that an official would be contacting him to explain what his decision and his status with the company would be.

28. On August 24, 2017, Plaintiff asked the Human Resources Director if there was a possibility that he could transfer to another managerial position or as District Manager to any area of Florida, and that he was willing to move. He was told the position had already been filled. That person had less experience and seniority than Plaintiff.

29. After Plaintiff made every effort to remain working with BCBG, he never received any subsequent communication informing him about his final status with the company, nor was he offered another position,

Case 3:18-cv-01075-CVR   Document 74   Filed 09/23/21   Page 8 of 19

José Rodríguez Rodríguez v. BCBG Max Azria, et al.
Civil No. 18-1075 (CVR)
Opinion and Order
Page 8
_____

compensation, or any offer whatsoever, this despite having occupied the positions of Area Manager, District Manager, and Regional Manager for Rave, Rave Max, and BCBG for a total of 30 years.

30. After the new leadership took control of the company in 2016, no opportunities were made available to Plaintiff in the mainland United States, whereas such opportunities had existed prior to that time.

31. Plaintiff worked until August 30, 2017, when he received an email from a coworker saying goodbye and highlighting the excellent work that he had done throughout his time with BCBG.  The stores closed the next day.

32. Plaintiff never received any communication from an official or manager, despite the effort, collaboration, and loyalty that he exhibited until the end.

33. Plaintiff was not offered any compensation or severance at the time of his separation even though the company had done so previously with other employees and managers.

34. After receiving the email, Plaintiff did not know what to do, as he had no letter to present to the Department of Labor.  On September 20, 2016, Hurricane María hit Puerto Rico, further worsening the situation.

35. This entire situation caused Plaintiff sleeplessness for three months, and to this day continues to cause Plaintiff restlessness, anxiety, depression, suffering, and serious emotional distress.  He does not enter any BCBG stores because he does not want to remember what was done to him.

Case 3:18-cv-01075-CVR   Document 74   Filed 09/23/21   Page 9 of 19

José Rodríguez Rodríguez v. BCBG Max Azria, et al.
Civil No. 18-1075 (CVR)
Opinion and Order
Page 9
_____

36. In complete disregard for the excellent work and the years of service offered to the company, Plaintiff felt humiliated with how BCBG told him they had eliminated all the positions that were equal or like the position of Area Manager when they still existed, and even worse, there were similar positions which Plaintiff was qualified to occupy.

37. Plaintiff was aware he needed mental health treatment to deal with this matter but had economic issues and did not have medical insurance. It took him eight (8) months to pay for one hospital bill.

38. Plaintiff also lacked funds to pay for his mortgage and was lucky to have been granted a six (6) month moratorium on his house mortgage payments by the bank.

39. Plaintiff was finally able to get a job six (6) months later, and by then had no time to receive mental treatment because he was behind paying his bills. He worked six (6) days a week and extra hours to try and make up for lost time.

40. Plaintiff's son, who had never worked before, was forced to take an eight (8) month leave from college and got a job at Kmart to help his father pay the bills.

41. It was a life changing experience. It took Plaintiff a long time to understand that after 30 years, he was no longer working for BCBG.

42. Plaintiff feels less secure today when interviewing. None of the positions he has interviewed for are akin to what he had before. He would like a manager or district manager position in a big store, but many stores have closed. He is always told he is over-qualified.

43. At the present time, Plaintiff is a salesperson in a furniture store, which is very different than what he did before. He asks himself whether he is too old to do that.

44. At the time he was dismissed, Plaintiff held the position of Puerto Rico Area Manager for BCBG. His highest salary in the last three (3) years was in 2015, when he held the position of District Manager. In 2015, Plaintiff earned $102,432.39, for an average monthly gross of $8,536.03.

45. BCBG acted in a discriminatory manner against Plaintiff based on age and national origin. This was evidenced by the questions posed by company managers to Plaintiff regarding his age, eliminating his Area Manager position, the unequal treatment by the company regarding the demotion and reduction in salary as Store Manager, the lack of opportunity to compete on equal terms with other managers for other open positions and failing to consider his experience and seniority during this process.

## LEGAL STANDARD

Rule 55 of Fed. R. Civ. P. reads in pertinent part:

(a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and

Case 3:18-cv-01075-CVR   Document 74   Filed 09/23/21   Page 11 of 19

José Rodríguez Rodríguez v. BCBG Max Azria, et al.
Civil No. 18-1075 (CVR)
Opinion and Order
Page 11
_____

> that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> (b) Entering a Default Judgment...
>
> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a    jury trial—when, to enter or effectuate judgment, it needs to:
>
> > (A) conduct an accounting.
> > (B) determine the amount of damages.
> > (C) establish the truth of any allegation by evidence; or
> > (D) investigate any other matter.

The Rules of Civil Procedure allow the Court to enter default when, as here, a party against whom a judgment is sought has failed to plead or otherwise defend.   Defendant Marquee Brands failed to answer the Complaint.   Thus, default was entered against it by the Clerk.   The result of this failure to answer is that all the allegations contained in the Complaint, except the amount of emotional damages, are deemed admitted as true. Fed.R.Civ.P. 8(b)(6); <u>Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co</u>., 771 F.2d 5, 13 (1st Cir. 1985).

Following the entry of default, a district court can enter a final default judgment without requiring further proof of damages if the claim is for a "sum certain." <u>See</u> 10 Moore's Federal Practice ¶55.22[1] (2002) ("In cases where the court has entered default judgment and the claim is for a sum certain, the court can enter the default judgment for

Case 3:18-cv-01075-CVR   Document 74   Filed 09/23/21   Page 12 of 19

José Rodríguez Rodríguez v. BCBG Max Azria, et al.
Civil No. 18-1075 (CVR)
Opinion and Order
Page 12
_____

the amount stated in the complaint."); see also KPS & Assocs., Inc. v. Designs By FMC, Inc., 318 F.3d 1 (1st Cir. 2003). When the amount is in dispute or is not readily ascertainable from the pleadings, however, a hearing may be required to set damages. See Fed.R.Civ.P. 55(b)(2); Ortíz- Gonzalez v. Fonovisa, 277 F.3d 59, 64 (1st Cir.2002).

In Plaintiff's Complaint, he alleged violations to Law 80 for unlawful termination, which entitles him to a sum certain amount for severance pay. He also alleged violations to Law 100 for discrimination and claimed emotional damages resulting therefrom. For this reason, an evidentiary hearing to ascertain those damages was held.

## ANALYSIS

### A. Law 80

Law 80 is a remedial statute that imposes a monetary penalty on employers who dismiss employees without just cause. Hoyos v. Telecorp Commc'ns, Inc., 488 F.3d 1, 6 (1st Cir. 2007). Law 80 offers relief for "[e]very employee in commerce, industry, or any other business or workplace … in which he/she works for compensation of any kind, contracted without a fixed term, who is discharged from his/her employment without just cause." P.R. Laws Ann. tit. 29, § 185a. "A discharge made by mere whim or fancy of the employer or without cause related to the proper and normal operation of the establishment shall not be considered as a discharge for [just] cause." Id. at § 185b. In such cases, the law requires the employer to pay the discharged employee a form of severance pay known as a "mesada," which is calculated using a formula provided by the statute. Id. at § 185a. If an employee is terminated for a reason that constitutes "just

Case 3:18-cv-01075-CVR   Document 74   Filed 09/23/21   Page 13 of 19

José Rodríguez Rodríguez v. BCBG Max Azria, et al.
Civil No. 18-1075 (CVR)
Opinion and Order
Page 13
_____

cause" under the statute, the employer will not be liable under Law 80. Id. at §§185a, b.

The Law 80 presumption is triggered when a plaintiff alleges unjustified dismissal and proves by a preponderance of the evidence that he was actually or constructively discharged. At that point, the burden then shifts to the employer to prove by a preponderance of the evidence that it had just cause to dismiss the employee. Alvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co., 152 F.3d 17, 28. (1st Cir. 1998). Plaintiff here has done both.

By failing to appear, Defendant did nothing. While Defendant might have had evidence of some sort of misconduct on Plaintiff's part, or perhaps an economic justification in support of its actions (for example, a reorganization), its failure to appear has effectively precluded such an argument. Plaintiff's allegations and testimony under oath that he was an exemplary employee, the many years of service he provided the company, how he helped the company implement changes and close stores and how he was ultimately dismissed without just cause[1] are unrebutted. Therefore, the Court finds that Plaintiff was discharged without just cause and the formula provided pursuant to Law 80 for the "mesada" is applicable.

Plaintiff was hired prior to the enactment of the 2017 amendments. As such, the Court must apply the formula for severance pay under the former Law 80.[2] The

---

[1] Plaintiff testified he was not even given a dismissal letter; for this reason, he had nothing to present to the Puerto Rico Department of Labor.

[2] See P.R. Laws Ann, tit, 29, § 185a, 2017 amendments, effective January 27, 2017: "In no case the severance pay required under §§ 185-185n of this title shall exceed the salary corresponding to nine (9) months of salary. The nine (9)-month cap shall not apply to employees hired before the effective date of the 'Labor Transformation and Flexibility Act'. Severance pay for such employees in the event of wrongful termination shall be computed using the laws in effect prior to the effective date of the 'Labor Transformation and Flexibility Act' ".

Case 3:18-cv-01075-CVR   Document 74   Filed 09/23/21   Page 14 of 19

José Rodríguez Rodríguez v. BCBG Max Azria, et al.
Civil No. 18-1075 (CVR)
Opinion and Order
Page 14
_____

remedies available under former Law 80 is a sum certain for salary indemnity depending on the number of years Plaintiff spent with the company, as well as an additional progressive indemnity for each year of service he worked for BCBG.

### B. Law 100

Puerto Rico Law 100 provides a cause of action in favor of those persons who suffer discrimination in their employment, in this case, because of age. Law 100 establishes a rebuttable presumption that the employer has discriminated illegally unless the employer can show that the discharge was justified. See generally P.R. Laws Ann. tit. 29, § 146. Once the Law 100 presumption has been triggered, it shifts not only the burden of production, but also the burden of persuasion, from the employee to the employer. See Ibáñez-Benítez v. Molinos de Puerto Rico, Inc., 114 P.R. Dec. 42, 52 (1983). Therefore, to rebut the Law 100 presumption, the employer must prove by a preponderance of the evidence that the challenged action was not motivated by discriminatory age animus. See Id., at 53.

The Law 100 presumption of discrimination operates in tandem with Law 80. The Law 100 presumption is triggered when it is shown that the employer lacked "just cause" to discharge or take other adverse action regarding the employee. Alvarez-Fonseca, 152 F.3d 17, 27-28. Law 80, in turn, defines a dismissal without just cause as a dismissal based on a reason not allowed by the statute, and allows dismissals for several reasons, including an employee's improper or disorderly conduct, negligent attitude towards his work, and violations of the employer's rules and regulations. See P.R. Laws Ann. tit. 29,

Case 3:18-cv-01075-CVR   Document 74   Filed 09/23/21   Page 15 of 19

José Rodríguez Rodríguez v. BCBG Max Azria, et al.
Civil No. 18-1075 (CVR)
Opinion and Order
Page 15
_____

§ 185b.  Law 100 additionally provides that a plaintiff's damages are to be doubled as a sanction for the discrimination and provides for attorney's fees to be awarded.   P.R. Laws Ann. tit. 29, § 146; Rivera v. DHL Sols. (USA), Inc., Civil No,07-1950 (HDL), 2010 WL 728347 at *2 (D.P.R. Feb. 26, 2010).

In the case at bar, Plaintiff credibly testified as to the many years he worked with the company, and the events that led to his ultimate dismissal.  These included comments about his age and "old school" style of doing things, the company's hiring of younger employees, the closeout of his position, the company's refusal to allow him to compete for other positions in Florida, its refusal to consider his experience and seniority, and the eventual offering of a substantially lower position and salary, all after Plaintiff helped the company with the closeout of several stores. It seems Defendant took advantage of and used Plaintiff's talents and good will and then discarded him after it achieved its goals of closing the different stores and the hiring of new personnel.

It bears mentioning again that this presumption could have been rebutted by Defendant had it made an appearance in this case and provided some justification for its actions.   Having failed to do so, Plaintiff's testimony stands uncontested.

Puerto Rico courts have held that although Law 80 is the exclusive remedy for unjust dismissal for covered employees, compensatory damages are available if another law specifically applies by its terms.  See, *e.g.,* Barreto v. ITT World Directories. Inc., 62 F.Supp.2d 387, 394 (D.P.R. 1999) (A claim that arises from conduct protected by Act 100, which specifically provides for a damages award to the discriminated employee, is

additional compensation permitted in a wrongful termination case); Pineda v. Lopito, Ileana & Howie, Inc., 656 F. Supp. 2d 268, 270 (D.P.R. 2009) (Law 100 allows a claimant to recover for emotional damages due to discrimination in addition to the Law 80 exclusive remedy for dismissal-without-just-cause claims).

In the present case, Plaintiff proffered credible and unrebutted evidence that Defendant discriminated against him, and ultimately dismissed him due to his age. For this reason, the Court finds that Plaintiff is entitled to the additional compensation for emotional damages that Law 100 provides.

**C. Damages.**

1. Award for wrongful termination under former Law 80

Former Law 80 law states that the salary base that the Court must use to establish Plaintiff's damages must be the highest salary earned within the three (3) previous years. See P.R. Laws Ann. tit 29, § 185d. Plaintiff testified that his highest salary was in 2015, and he was earning $8,536.03 monthly. The statute states that a claimant is entitled to the sum of two calculations performed based on the total time he worked for the company. Id. at § 185a.

Plaintiff worked over 15 years with Defendant. Thus, he must be awarded the equivalent of six (6) months' salary, amounting to $51,216.18 ($8,536.03 x 6). Id. at § 185a(a).

Additionally, because Plaintiff worked for Defendant over 15 years, Plaintiff must also be awarded the equivalent to three (3) week's salary for each year of service. Id. at

Case 3:18-cv-01075-CVR   Document 74   Filed 09/23/21   Page 17 of 19

José Rodríguez Rodríguez v. BCBG Max Azria, et al.
Civil No. 18-1075 (CVR)
Opinion and Order
Page 17
_____

§ 185a(b). This brings this calculation to a total of $192,060.67 ($6,402.02 x 30).

Therefore, the severance pay award amounts to $243,276.90.

### 2. Award for age discrimination under Law 100

Plaintiff testified that his economic situation after he was dismissed caused him grave concern and problems. He was unable to pay his bills and his mortgage. Moreover, he was aware he needed mental health treatment to cope but was unable to afford it because he had no medical plan. Plaintiff's older son, who had no previous work experience, had to take a leave of absence from college to take a job and help his father pay the bills. This scenario worsened after Hurricane María hit Puerto Rico in September 2017 and its devastating aftermath, which is well known. It was only six (6) months later that Plaintiff was able to obtain a job, and even then, he worked six (6) days a week and extra hours to compensate and earn more money to pay his outstanding bills. He was lucky enough that the bank gave him a moratorium on his mortgage, but the entire situation caused him sleeplessness, stress, and humiliation. Plaintiff could not understand how or why he was not selected to continue with the company after all his years of loyal service.

Therefore, the Court finds an award to Plaintiff Rodríguez in the amount of $50,000.00 in compensatory damages is appropriate considering Defendant's discriminatory actions. This amount is doubled pursuant to Law 100. P.R. Laws Ann. tit. 29, § 147a(a)(1). Thus, the total amount for compensatory damages against Defendant Marquee Brands is $100,000.00.

Case 3:18-cv-01075-CVR   Document 74   Filed 09/23/21   Page 18 of 19

José Rodríguez Rodríguez v. BCBG Max Azria, et al.
Civil No. 18-1075 (CVR)
Opinion and Order
Page 18
_____

### 3. Attorney's fees

Plaintiff also requested attorney's fees be awarded to him pursuant to Law No. 100, as a prevailing party. The Supreme Court of Puerto Rico has determined that "ordinarily, the amount that the attorney of a prevailing worker may receive under an Act No. 100 claim shall be twenty-five (25%) of the base compensation awarded to the worker." López-Vicil v. ITT Intermedia, Inc., 97 J.T.S. 104, 1250, 1254 (1997). "In other words, the reward is 25% of the compensatory damages award before the award is doubled." Ramos, et al. v. Davis & Geck, et al., 976 F.Supp. 108, 109 (D.P.R.1997), *aff'd by* 167 F.3d 727 (1st Cir. 1999). Plaintiff is clearly a prevailing party in this case.

Plaintiff was awarded $50,000.00 in compensatory damages, as above mentioned. As such, the Court awards attorney's fees in the amount of $12,500.00, or 25% of the award before doubling it.

## CONCLUSION

For the above stated reasons, Plaintiff's Motion for Default Judgment (Docket No. 59) is GRANTED. The Court finds that Defendant Marquee Brands LLC discriminated against Plaintiff based on his age and was unjustly dismissed. Accordingly, the Court awards Plaintiff the following:

a. $243,276.90 in severance pay under Law 80 against Marquee Brands.

b. $50,000.00 in compensatory damages for the violation of Law 100 against Marquee Brands, doubled to $100,000.00.

c. Attorney's fees under Law 100 in the amount of $12,500.00.

This brings the total amount of Plaintiff's award against Defendant Marquee Brands, LLC, to $355,776.90.

Default Judgment will be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 23rd day of September 2021.

                                          S/CAMILLE L. VELEZ-RIVE
                                          CAMILLE L. VELEZ RIVE
                                          UNITED STATES MAGISTRATE JUDGE